No. 80-348

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

ROBERT BENNETT,

Claimant and Appellant,

vs.

HUGH BENNETT, Employer and
STATE COMPENSATION INSURANCE FUND,

Defendant and Respondent.

Appeal from:   Workers' Compensation Court
               Hon. William Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Hoyt and Trieweiler, Great Falls, Montana
        John Hoyt argued, Great Falls, Montana

    For Respondent:

        Garrity, Keegan and Brown, Helena, Montana
        Thomas Keegan argued, Helena, Montana

Submitted:  October 20, 1981

Decided:  DEC - 7 1981

Filed: DEC - 7 1981

_____
Thomas J. Kearney
                          Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is from a denial of benefits from the decision of the Workers' Compensation Court.

Five issues are raised in this appeal:

1. If the Division of Workers' Compensation has not published rules governing the time and method of electing coverage for members of an employer's family dwelling in the employer's household, is the Division precluded from denying benefits to Robert Bennett on the basis that no election was made to cover him?

2. Is the State Fund equitably estopped from denying coverage?

3. Does section 39-71-401, MCA, violate due process because employers are not instructed on how to elect family coverage?

4. Does the family member exclusion deny equal protection?

5. Should appellant be awarded increased compensation for unreasonable delay or refusal to pay pursuant to section 39-71-2907, MCA?

We reverse.

The facts are agreed upon by both sides. Hugh Bennett established Bennett Well Service in Cut Bank, Montana, in September 1975. On September 28, 1975, an employee of the State Fund ordered that compensation enrollment forms for Bennett Well Service be sent to Bennett's attorney and also to his accountant in Cut Bank. These forms were sent with a letter explaining the special endorsements required for employees not required to be covered by workers' compensation insurance. The enrollment forms, together with

Bennett's special election to cover himself as a sole employer, were received by the State Fund on October 3, 1975.

In June 1979 the appellant, Robert Bennett, a high school student who still resided in his father's home, began to work for his father at Bennett Well Service. On June 26 he fractured his leg while working. A first report of the injury was filed on July 2, 1979. On July 13, 1979, Hugh Bennett elected coverage for Robert and on July 31, which was the end of the first quarter of 1979 in which Robert had been employed, Bennett Well Service sent its quarterly reports and premiums, including a premium for Robert to the State Fund. All premiums, including that for Robert, were accepted. The State Fund denied coverage at a later date because the election had been made after the injury.

In this case Bennett Well Service followed the proper procedures by submitting a quarterly report to the Division at the end of each quarter. There was no showing to the corporation or its agents that there was a different reporting method for a family member residing in the employer's household.

In refusing to grant appellant's request for coverage the State Fund denied the claim on the basis of the fact that Bennett Well Service had not elected compensation for Robert under the provisions of section 39-71-401(2)(c), MCA, which states:

> "Employments_covered_and_employments exempted. (1) Except as provided in subsection (2) of this section, the Workers' Compensation Act applies to all employers as defined in 39-71-117 and to all employees as defined in 39-71-118. An employer who has any employee in service under any appointment or contract of hire, expressed or implied,

son, Robert Bennett. The quarterly report was filed at the end of the quarter, July 31, 1979, as usual.

The June 26, 1979, injury was reported to the Division on July 2, 1979, and an election of coverage for the employer's family members dwelling in the employer's household was filed on July 10, 1979.

The Division argues that Robert Bennett was not covered on June 26, 1979, because (1) the employer did not elect coverage until July 10, 1979, and (2) Robert Bennett worked the summer of 1978 without coverage. But, Robert Bennett testified that he would not have gone to work without workers' compensation coverage. Large placards at his work place told him all employees were covered.

Respondent argues that the claimant should not be allowed to be insured ex post facto; that the Division did prescribe procedures for employees to elect coverage; and that the employer received forms and a letter clearly explaining that some employees were not covered unless special endorsements forms were completed prior to an injury.

The employer had endorsed the same form to be covered, so he was obviously familiar with the procedure. The payroll reports sent to the employer every three months also contained this reminder:

> "10. OTHER ENDORSEMENTS: Unless specific endorsements have been made, the following types of employment are not covered:
>
> "1. Members of the employer's immediate family (wife, husband, son or daughter) dwelling in the employer's household.
>
> "Include family members or household employees where specific endorsements are on file.
>
> "or

oral or written, shall elect to be bound by
the provisions of compensation plan No. 1, 2,
or 3. Every employee whose employer is bound
by the Workers' Compensation Act is subject
to and bound by the compensation plan that
has been elected by the employer.

"(2) Unless the employer elects coverage for
these employments under this chapter and an
insurer allows such an election, the Workers'
Compensation Act does not apply to any of the
following employments:

". . .

"(c) employment of members of an employer's
family dwelling in the employer's household;"

The first and controlling issue in this cause is
whether the Division of Workers' Compensation failed to
publish rules governing the time and method of electing
coverage for members of an employer's family dwelling in the
employer's household. If rules were not published, can the
Division deny benefits on the basis that no election was
made to cover the claimant?

The court found in its Finding of Fact No. 22, that,
"the Division of Workers' Compensation has published rules
concerning the way that the employer may elect to bring his
employees within the provisions of 39-71-401."

It is important to consider when the Division is
notified of an employer's new employees. First, the Divi-
sion sends the employer a list of premiums for each job
classification. Then, the employer prepares his quarterly
report to the Division, setting forth the names of the
employees, the amount paid to the employees, and the type of
work done by the employees. A check for the premiums and
the quarterly report, are filed at the end of the quarter.

This is precisely what the employer, Hugh Bennett,
did in this case for all of his employees, including his

"10. OTHER COVERED ENDORSEMENTS: Include family members or household employees where specific endorsement forms are on file." (Emphasis added.)

Respondent argues that since the employer personally endorsed one of these forms and received notice every three months, the employer received adequate notice. Thus, the Division's duty to publish rules notifying employers of the election procedure pursuant to section 39-71-2303, MCA, was complete.

Section 39-71-203, MCA, gives the Division authority to "perform any and all things . . . which are necessary" to administer the Workers' Compensation Act. Section 39-71-2303, MCA, orders the Division to "prescribe the procedure by which the employers may elect to be bound by compensation plan No. 3, including the effective time of such election . . ." The Division failed to prescribe the proper procedure or rules other than reporting and paying procedures above. Therefore, Finding of Fact No. 22 by the Workers' Compensation Court is incorrect and unsupported by the evidence. The court obviously was misled. Hugh Bennett did exactly as instructed by the Division in following precisely the reporting and premium payment procedures outlined by the Division to provide coverage for his employees. The record shows that he notified the Division of (1) the accident; (2) a week or ten days later he elected to come under the plan; and (3) that he paid the necessary premium to cover for that period.

The Division does not have rules informing plan 3 members of the time and method of electing coverage for members of an employer's family dwelling in the employer's household. Therefore, we reverse the Workers' Compensation

Court and order the claim approved. The appellant's request for increased compensation pursuant to section 39-71-2907, MCA, is denied.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice Fred J. Weber dissenting:

I respectfully dissent. The result of the majority opinion is that Robert Bennett, a teenage son of Hugh Bennett, of Bennett Well Service, will be awarded workers' compensation for his fractured leg. On its face that is commendable. Unfortunately, the result is attained only by disregarding the specific statutory requirements for obtaining Workers' Compensation coverage in Montana.

Following are significant facts from the record:

June, 1979 - Robert Bennett began work.

June 26 - Robert fractured leg while working.

July 2 - Bennett Well Service submitted employer's first report of occupational injury to Division.

July 10 - Family member endorsement sent to Division by Bennett Well Service containing the election to include Robert Bennett and Scott Bennett, sons of Hugh Bennett, members of the employer's immediate family, under Workers' Compensation. Endorsement accompanied by letter from Bennett Well Service attorney and affidavit of accountant.

July 18 - Division wrote Bennett Well Service and its attorney denying coverage for Robert's injury and stating in part:

"When this firm enrolled with the State Fund a letter was forwarded to them carefully explaining that members of an employer's family dwelling in the employer's household were not covered under the Workers' Compensation Act, unless endorsements were filed with the Fund indicating that the employer wished to cover and pay premiums on household employees. A copy of this letter dated September 29, 1975 that was forwarded to Bennett Well Service in care of John P. Moore, Box 997, Cut Bank, Montana, is enclosed. These endorsements were never filed to cover this man's sons and the premium has never been paid to us for their employment. The payroll reports in our file indicate that they have never been listed as employees and payrolls have not been reported to us on their salaries and premium has not been paid on them.

"The endorsement you furnished us will be effective July 13, 1979, and Robert and Scott Bennett will be covered effective as of that date. However, there is no way I can effect coverage to

-8-

> Robert Bennett for his injury to cover medical and compensation benefits for his injury of June 26, 1979."
>
> July 31 - Bennett Well Service submitted quarterly report, and with it paid premium for the two sons, Robert and Scott.

Before denial of coverage on July 18, there had been no payment by Bennett Well Service of a premium for Robert and retention by the Division of such premium payment. Therefore, one could not conclude that insurance coverage should be granted because of the payment and retention of premiums.

The majority opinion states that the controlling issue is whether the Division of Workers' Compensation failed to publish rules governing the time and method of electing coverage for members of an employer's family dwelling in the employer's household. The opinion refers to section 39-71-2303, MCA, suggesting that section 39-71-2303 requires the Division to prescribe rules which are applicable here. We respectfully point out that section 39-71-2303 only refers to the procedure by which an employer may elect to be bound by compensation plan 3 -- that being the plan under which an employer elects to be covered by the State Fund. In no way is that applicable here. That section does not require the promulgation of rules which apply where there is to be an election for coverage of a family member. It is true that the Workers' Compensation Court incorrectly found in its Finding of Fact 22 that the Division had published rules concerning the way an employer may elect to bring his employees within the provisions of the Act. No specific rule was set forth by the Division, although forms for election are provided. However, the majority opinion has not suggested why this should be classed as reversible error.

-9-

Bennett Well Service started in business in 1975. At that time, the statutory provisions excluding certain employments from coverage by the Workers' Compensation Act were in effect in the same manner as today. Section 39-71-401, MCA, makes it clear that the legislature decided that the Workers' Compensation laws should not apply to certain types of employment unless an employer first takes an affirmative step to obtain coverage:

> "(2) Unless the employer elects coverage for these employments under this chapter and an insurer allows such an election, the Workers' Compensation Act does not apply to any of the following employments:
>
> "(a) household and domestic employment;
>
> "(b) casual employment as defined in 39-71-116 (3);
>
> "(c) employment of members of an employer's family dwelling in the employer's household;
>
> "(d) employment of sole proprietors or working members of a partnership;
>
> "(e) employment for which a rule of liability for injury, occupational disease, or death is provided under the laws of the United States;
>
> "(f) any person performing services in return for aid or sustenance only;
>
> "(g) employment with any railroad engaged in interstate commerce, except that railroad construction work shall be included in and subject to the provisions of this chapter." Section 39-71-401(2), MCA. (Emphasis supplied.)

The result of the majority opinion is to negate the essential provisions of section 39-71-401(2), MCA. That law requires an election of coverage by an employer before the Workers' Compensation Act shall apply to certain described employments. The majority opinion will allow employers to adopt a "wait and see" approach to elections for coverage. The majority opinion suggests that an employer of household

and domestic help, casual employees, members of an employer's family, sole proprietors, working members of a partnership, and persons performing services for aid or sustenance only should wait until someone is injured before making an election for coverage. At that point, the employer can apparently elect coverage and have the coverage extended to an injury which has already taken place. The savings to employers in premiums is obvious. This decision actually reverses the requirements of the law because it finds that the Act applies to an injury even though there has been no election of coverage and even though the Act states that it "does not apply."

We respectfully suggest that in the absence of an advance election of coverage for Robert Bennett, there was no coverage at the time of his injury and the decision of the Workers' Compensation Court should be affirmed.

_____
Justice

I concur in the foregoing dissent of Mr. Justice Fred J. Weber.

_____
Chief Justice